IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0728
════════════
 
Fairfield Insurance Company, 
Appellant,
 
v.
 
Stephens Martin Paving, LP; 
Carrie Bennett, Individually and as Representative of the Estate of Roy Edward 
Bennett, Deceased, and as Next Friend of Lane Edward Bennett, Cody Lee Bennett, 
and April Anne Bennett, Minors, Appellees
 
════════════════════════════════════════════════════
On Certified Question from the United 
States
Court of Appeals for the Fifth 
Circuit
════════════════════════════════════════════════════
 
 
Argued November 9, 
2004
 
 
            
Justice Wainwright 
delivered the opinion of the Court, joined by Chief Justice Jefferson, Justice Hecht, Justice 
O’Neill, Justice Brister, Justice Medina, Justice Green, and Justice Willett, and by Justice Johnson as to sections I, II, and IV only.
 
            
Justice Hecht filed a 
concurring opinion, joined by Justice Brister, Justice Medina, and Justice Willett. 
 
Justice Johnson filed a concurring opinion.
 
            
This case is before the Court on a certified question from the United 
States Court of Appeals for the Fifth Circuit: “Does Texas public policy 
prohibit a liability insurance provider from indemnifying an award for punitive 
damages imposed on its insured because of gross negligence?” Fairfield Ins. 
Co. v. Stephens Martin Paving, LP, 381 F.3d 435, 437 (5th Cir. 2004). 
Pursuant to article V, section 3-c of the Texas Constitution and rule 58.1 of 
the Texas Rules of Appellate Procedure, we answer that Texas public policy does 
not prohibit coverage under the type of workers’ compensation and employer’s 
liability insurance policy at issue in this case. 
I. FACTUAL AND PROCEDURAL BACKGROUND
            
Stephens Martin Paving, a highway paving company, employed Roy Edward 
Bennett as a brooming machine operator. On December 20, 2002, Bennett died as a 
result of injuries that occurred when a brooming machine rolled over. Stephens 
Martin Paving carried a workers’ compensation and employer’s liability insurance 
policy, issued by Fairfield Insurance Company. Fairfield paid workers’ compensation benefits to Bennett’s 
wife and children under the policy in accordance with Texas workers’ 
compensation law.
            
On January 24, 2003, Bennett’s survivors sued Stephens Martin Paving for 
gross negligence, seeking exemplary damages because Stephens Martin Paving 
allegedly failed to provide a safe place to work, failed to follow and enforce 
OSHA safety rules and regulations, and failed to properly train and supervise 
its employees. Having received workers’ compensation benefits, Bennett’s 
survivors are barred by statute from recovering actual damages and seek only 
exemplary damages in the suit.[1]
            
On February 24, 2003, Fairfield sued 
Stephens Martin Paving and Bennett’s survivors in federal district court, 
seeking a declaratory judgment that Fairfield owed no duty to defend or indemnify 
Stephens Martin Paving in the suit for exemplary damages. Relying on Ridgway 
v. Gulf Life Insurance Co., 578 F.2d 1026, 1029 (5th Cir. 1978), the federal 
district court concluded that the language in Fairfield’s policy covers 
exemplary damages and that Texas public policy does not prohibit insurance 
coverage of those damages. The court denied Fairfield’s motion for summary 
judgment and entered a judgment declaring that Fairfield has a duty to defend 
Stephens Martin Paving and a duty to indemnify Stephens Martin Paving as 
provided by the policy if Stephens Martin Paving is adjudicated responsible for 
the damages sought in the underlying suit brought by Bennett’s survivors (either 
by judgment or settlement). Fairfield appealed, and the Fifth Circuit 
certified to this Court the question of the insurability of exemplary damages 
for gross negligence. Fairfield Ins. Co., 381 F.3d at 437; Tex. R. App. P. 58.1. 
II. COVERAGE OF EXEMPLARY DAMAGES FOR GROSS NEGLIGENCE 
            
Determining whether exemplary damages for gross negligence are insurable 
requires a two-step analysis. See, e.g., Grinnell Mut. Reinsurance Co. 
v. Jungling, 654 N.W.2d 530, 535–37 (Iowa 2002); Fluke Corp. v. Hartford Accident & 
Indem. Co., 34 P.3d 809, 814 (Wash. 2001); 
Brown v. Maxey, 369 N.W.2d 677, 685 (Wis. 1985). First, we decide whether the plain 
language of the policy covers the exemplary damages sought in the underlying 
suit against the insured. 
            
Second, if we conclude that the policy provides coverage, we determine 
whether the public policy of Texas allows or prohibits coverage in the 
circumstances of the underlying suit. We first look to express statutory 
provisions regarding the insurability of exemplary damages to determine whether 
the Legislature has made a policy decision. See Town of Flower Mound v. 
Stafford Estates Ltd. P’ship, 135 S.W.3d 620, 628 (Tex. 2004) (“Generally, 
‘the State’s public policy is reflected in its statutes.’”) (quoting Tex. 
Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 250 (Tex. 2002)); FM Props. 
Operating Co. v. City of Austin, 22 S.W.3d 
868, 873 (Tex. 
2000). If the Legislature has not made an explicit policy decision, we then 
consider the general public policies of Texas. 
A. POLICY LANGUAGE
            
The policy Fairfield issued to Stephens Martin Paving 
contains two types of insurance: workers’ compensation insurance and employer’s 
liability insurance. Under the workers’ compensation part of the policy, 
Fairfield agrees to pay the benefits that Stephens Martin Paving is required to 
pay by Texas workers’ compensation law and other enumerated costs. In this case, 
the parties agree that the policy covers the workers’ compensation benefits paid 
to the Bennetts. The workers’ compensation part of the policy makes the employer 
responsible for “any payments in excess of the benefits regularly provided by 
the workers compensation law including those required because: 1. of your 
serious and willful misconduct; . . . 3. you fail to comply with a health or 
safety law or regulation.” 
            
Under the employer’s liability part of the policy, Fairfield agrees to 
pay “all sums [Stephens Martin Paving] legally must pay as damages because of 
bodily injury to [its] employees, provided the bodily injury is covered by this 
Employers Liability Insurance” and other specific costs. It excludes coverage of 
“punitive or exemplary damages because of bodily injury to an employee employed 
in violation of law.” An endorsement to the policy adds that “[t]his exclusion 
does not apply unless the violation of law caused or contributed to the bodily 
injury.” The policy also excludes damages arising from injuries caused by 
intentional acts. 
            
The Bennetts’ claim against Stephens Martin Paving seeks only exemplary 
damages for gross negligence. Therefore, the coverage issue in this case 
concerns only the employer’s liability part of the policy and not the part of 
the policy regarding workers’ compensation benefits. Because the Fifth Circuit’s 
question is directed only at the public policy of Texas, we limit our 
discussion to the second prong of the analysis and presume that the policy 
language covers the exemplary damages sought. 
B. TEXAS STATUTORY PROHIBITIONS
            
When considering whether public policy should prohibit the coverage of 
exemplary damages in a particular case, courts should study the contexts in 
which the Legislature has spoken. In a few instances, the Legislature has 
expressly prohibited or otherwise limited the availability of such insurance. 

            
Health Care Providers: Article 5.15-1, section 8 of the 
Texas Insurance Code prohibits insurance coverage of exemplary damages assessed 
against health care providers and physicians, creating an exception for a subset 
of healthcare providers including hospitals, nursing homes, and assisted living 
facilities:
 
No policy 
of medical professional liability insurance issued to or renewed for a health 
care provider or physician in this state may include coverage for exemplary 
damages that may be assessed against the health care provider or physician; 
provided, however, that the commissioner may approve an endorsement form that 
provides for coverage for exemplary damages to be used on a policy of medical 
professional liability insurance issued to a hospital, as the term “hospital” is 
defined in this article, or to a for-profit or not-for-profit nursing home or 
assisted living facility.
 
 
Tex. Ins. Code art. 5.15-1, § 8.[2]
            
Guaranty Funds and Excess Liability Pools: The Legislature has 
explicitly excluded risk management and excess insurance pools for various 
public entities[3] from paying exemplary damages.[4] In 1989, the Legislature amended the 
Texas Property and Casualty Insurance Guaranty Act to exclude from the 
definition of “covered claims” against insolvent insurers “any punitive, 
exemplary, extracontractual, or bad faith damages awarded in a court judgment 
against an insured or insurer.”[5] The Legislature has included the same 
prohibition for several other such entities covering exceptional risks.[6] In each instance the Legislature’s 
concern appears to have been for the financial impact on these entities of 
insurance for exemplary damages.[7]
            
The Legislature is aware of and sensitive to issues of insurance 
coverage of exemplary damages. It has made the policy decision to prohibit 
insurance coverage of those damages in selected circumstances. 
C. WORKERS’ COMPENSATION
            
This Court has recognized that “the administration of the workers’ 
compensation system is heavily imbued with public policy concerns.” 
Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 553 
(Tex. 2001), 
superseded by statute, Tex. Lab. 
Code § 406.003(e), as explained in Storage & Processors, Inc. v. 
Reyes, 134 S.W.3d 190, 192 (Tex. 2004). Because this case arises from a 
claim for exemplary damages under the Texas Workers’ Compensation Act, we review 
the applicable statutory scheme and accompanying insurance regulation of that 
field. 
            
In Texas, participation in the workers’ 
compensation system is optional for employers and employees. However, if the 
employer purchases workers’ compensation insurance, the employer must adhere to 
the statutory and regulatory guidelines of the Workers’ Compensation Act. Among 
these requirements is the legislative directive that only workers’ compensation 
policies approved by the Texas Department of Insurance are available in 
Texas.[8] Tex. Ins. Code art. 5.56.[9] These policies provide broad coverage for 
an employee’s injuries. In exchange for fulfilling the Act’s requirements, the 
Act protects an employer from an employee’s common law claims for injuries or 
death occurring during the course and scope of the employee’s work 
responsibilities, except those claims involving the death of an employee caused 
by an employer’s intentional or grossly negligent conduct. Tex. Lab. Code § 408.001. An employee 
who does not “opt out” of the workers’ compensation system waives claims not 
provided by the Act. Id. § 406.034. Thus, workers’ 
compensation insurance provides the exclusive remedy for the injury or death of 
a participating employee in most cases.
            
This exclusive remedy does not prohibit recovery of exemplary damages if 
the employee’s death is caused by the employer’s gross negligence. Id. § 
408.001(b)–(c). Section 408 states:
 
            
(a) Recovery of workers’ compensation benefits is the exclusive remedy of 
an employee covered by workers’ compensation insurance coverage or a legal 
beneficiary against the employer or an agent or employee of the employer for the 
death of or a work-related injury sustained by the employee.
 
            
(b) This section does not prohibit the recovery of exemplary damages by 
the surviving spouse or heirs of the body of a deceased employee whose death was 
caused by an intentional act or omission of the employer or by the employer’s 
gross negligence.
 
            
(c) In this section, “gross negligence” has the meaning assigned by 
Section 41.001, Civil Practice and Remedies Code.
 
The Bennetts 
bring this claim for exemplary damages only under Subsections 408(b) and (c), 
arguing that Stephens Martin Paving’s gross negligence caused Bennett’s 
death.
            
TDI is authorized to adopt rules “governing hearings and other 
proceedings necessary for the promulgation or approval of rates[,] . . . policy 
forms[,] or policy form endorsements.” Tex. Ins. Code art. 1.33C. Article 5.56 
of the Insurance Code provides that TDI “shall prescribe standard policy forms 
to be used by all companies or associations writing workmen’s compensation 
insurance in this State” and prohibits organizations from using policy forms 
“other than those made, established and promulgated and prescribed by [TDI],” 
except as specifically provided by the statute.[10] By Article 5.62, the Legislature 
“empowered [TDI] to make and enforce all such reasonable rules and regulations 
not inconsistent with the provisions of this subchapter as are necessary to 
carry out its provisions.” Tex. Ins. 
Code art. 5.62.
            
Under the authority delegated to TDI from the Legislature, TDI approves 
standard workers’ compensation insurance policies and endorsements. See 
Texas Workers’ Compensation Commission and Employers’ Liability Manual, 
available at http://www.tdi.state.tx.us/wc/regulation/index.html#manual. As 
previously discussed, the policy provides two types of insurance 
coverage—workers’ compensation insurance and employers’ liability insurance. The 
workers’ compensation part of the policy only provides coverage for benefits 
required by workers’ compensation law and other enumerated costs, excluding 
punitive damages. If, under Section 408.001, workers’ compensation insurance 
provides the exclusive remedy for an injured employee who is participating in 
the system, then why would the TDI-approved, standard policy—the only policy 
workers’ compensation insurers may use—provide any additional liability 
insurance to employers? The statutory scheme and TDI’s execution of the scheme 
reveal an intent to provide additional insurance coverage—coverage for an 
employer’s gross negligence.[11] Although Section 408.001 allows an 
employee to pursue a claim for exemplary damages against an employer for 
intentional acts, the insurance policy here excludes coverage for such 
intentional acts. Thus, the “all sums” language in the employer’s liability part 
of this TDI-approved, dual coverage policy covers some of the common law claims 
excluded from the workers’ compensation part of the policy, but it does not 
cover claims based on intentional acts. Under TDI’s policy, a participating 
employer would have coverage for workers’ compensation claims and claims based 
on gross negligence. The Legislature’s expressed intent is that Texas public policy does 
not prohibit insurance coverage for claims of gross negligence in this 
context.
III. PUBLIC POLICY CONSIDERATIONS
            
Although the Legislature’s expressed direction ends our inquiry in the 
present case, we recognize that the Fifth Circuit framed its certified question 
as a broad inquiry about Texas public policy and the coverage of 
exemplary damages. We hesitate to opine on policy language and fact situations 
not before us, but also recognize the import of this issue and therefore discuss 
some of the considerations relevant to determining whether Texas public policy 
prohibits insurance coverage of exemplary damages in other contexts in the 
absence of a clear legislative policy decision.
A. SUMMARY OF THE DEBATE
            
Although determining whether public policy prohibits the insurance 
coverage of exemplary damages for gross negligence in Texas is a novel question for this Court, the issue is no 
stranger to the United 
States’ legal community. Christopher A. Wilson, 
Lazenby after Hodges—Insurability of Punitive Damage Awards in 
Tennessee: A 
Continuing Question of Public Policy, 36 U. Mem. L. Rev. 463 (2006); Stephanie 
L. Grassia, The Insurability of Punitive Damages in Washington: Should Insureds Who Engage in Intentional 
Misconduct Reap the Benefit of Their “Bargains?,” 26 Seattle U. L. Rev. 627 (2003); Lorelie S. 
Masters, Punitive Damages: Covered or Not?, 55 Bus. Law. 283 (1999); Michael A. 
Rosenhouse, Annotation, Liability Insurance Coverage as Extending to 
Liability for Punitive or Exemplary Damages, 16 A.L.R.4th 11 (1982). 
            
For over forty years, courts, legislatures, and scholars nationwide have 
struggled with this issue. Of the forty-five states in which the highest court 
of the state or the legislature has addressed the insurability of exemplary 
damages in some fashion, twenty-five have established generally that their 
public policy does not prohibit coverage, sometimes including or excluding the 
uninsured motorist or vicarious liability contexts.[12] Eight states have adopted a broad 
prohibition against insuring exemplary damages.[13] Seven states allow insurance coverage of 
exemplary damages only 
class=Section2> 
in the 
vicarious liability context, prohibiting the practice otherwise.[14] Three states allow insurance coverage of 
exemplary damages in the uninsured motorist context, but have not directly 
spoken outside this context.[15] Two other states have precluded 
insurance coverage of exemplary damages in the uninsured motorist context, but 
have not otherwise directly spoken on the issue.[16] Finally, the insurability of exemplary 
damages resulting from acts akin to gross negligence has not been addressed by 
the highest court or legislature in Indiana, 
Michigan, Missouri, and Texas.[17] Thus, the majority of states that have 
considered whether public policy prohibits insurance coverage of exemplary 
damages for gross negligence, either by legislation or under the common law, 
have decided that it does not.
            
Two key cases, decided over forty years ago, continue to illustrate the 
opposing viewpoints on the insurability of exemplary damages: Northwestern 
National Insurance Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962), and 
Lazenby v. Universal Underwriters Insurance Co., 383 S.W.2d 1 (Tenn. 1964). In 
McNulty, a drunk driver seriously injured another motorist in Florida. 307 F.2d at 433. 
The injured motorist sued for compensatory and punitive damages, securing a 
verdict for $57,500: $37,500 in compensatory damages and $20,000 in punitive 
damages. Id. The drunk driver’s insurance 
policy provided $50,000 in coverage. Id. The insurer argued that only the 
compensatory part of the verdict was covered by the policy. Id. The court 
agreed, holding that Florida public policy prohibited the 
insurability of punitive damages. Id. at 434.
            
Key to the court’s reasoning was its conclusion that Florida law characterized 
“punitive damages as a penalty, imposed as a means of punishing the defendant in 
order to deter him and others from antisocial conduct, and to no significant 
extent compensation.” Id. at 436. The court relied 
heavily on the different functions of punitive and compensatory damages in 
different states’ schemes:
 
The 
crucial distinction . . . is the different function served by compensatory and 
punitive damages. In a system of law basing recovery of damages on the 
defendant’s culpability, compensatory liability, while it may discourage 
negligent conduct as a side effect, is primarily designed to shift a loss from a 
wholly innocent party to one whose fault is responsible for causing the loss, 
although in many cases the fault of the responsible party may not have been so 
blameworthy that he would have been punished criminally if the fault had not 
caused an accident. The rationale of compensatory damages is not so much a 
policy that the responsible party should pay; it is more a policy that the 
wholly innocent party should not pay. Insurance against compensatory liability 
therefore does not frustrate the reason for imposing the liability. But in a 
case involving the determination that punitive damages are insurable the public 
policy considerations are broader and more important.
 
 
Id. at 438. The 
court concluded that allowing a wrongdoer “to insure himself against punishment” 
would result in “a freedom of misconduct inconsistent with the establishment of 
sanctions against such conduct.” Id. at 440. However, even the 
McNulty court recognized some exceptions to this rule, suggesting that 
public policy would not prohibit an employer from obtaining insurance to cover 
exemplary damage awards arising from the acts of employees. Id. 
            
The Supreme Court of Tennessee decided the lead case in support of the 
insurability of exemplary damages only a few years after the McNulty 
decision. Lazenby, 383 S.W.2d 1. Again, the case involved an insurance 
company’s refusal to pay the punitive damages portion of a verdict against a 
drunk driver. Id. at 2. The court recognized that the 
dominant purpose of exemplary damages in Tennessee was similar to that discussed 
in McNulty: “the interest of society and of the agreed [sic] individual 
are blended and such damages are allowed as punishment for such conduct and as 
an example or warning to the one so guilty, and others, in order to deter them 
from committing like offenses in the future.” Id. at 4. Despite the similarity of the 
two courts’ characterizations of the purpose of exemplary damages, the Tennessee 
Supreme Court held that the exemplary damages in that case were insurable. 
Id. at 
5. 
            
First, the Lazenby court explained that if criminal sanctions 
“apparently have not deterred this slaughter on our highways and streets,” then 
“the closing of the insurance market, in the payment of punitive damages” would 
be unlikely to deter such wrongful conduct. Id. Second, the expectations of 
the insured, upon reading the plain language of the insurance policy, was that 
exemplary damages would be covered absent intentional conduct to injure. 
Id. The 
court also concluded that the line between “simple negligence and negligence 
upon which an award of punitive damages can be made” did not justify a public 
policy exception for acts otherwise covered by the insurance policy. Id. Finally, the 
court observed that using public policy arguments to partially void a contract 
that, if construed as written, would protect the insured from both compensatory 
and punitive damages should not be done “except in a clear case” and concluded 
that “the reasons advanced do not make such a clear case.” Id. 
            
These cases outline the primary arguments advanced by the parties in this 
case and the arguments considered by courts nationwide. We now consider these 
arguments in light of Texas law.
B. TEXAS PUBLIC POLICY
            
In the absence of expressed direction from the Legislature, whether a 
promise or agreement will be unenforceable on public policy grounds will be 
determined by weighing the interest in enforcing agreements versus the public 
policy interest against such enforcement. See Restatement (Second) of Contracts § 
178(1) (“A promise or other term of an agreement is unenforceable on grounds of 
public policy if legislation provides that it is unenforceable or the interest 
in its enforcement is clearly outweighed in the circumstances by a public policy 
against the enforcement of such terms.”). On one side of the scale is Texas’ general policy 
favoring freedom of contract. Lawrence, 44 S.W.3d at 553. Courts 
weighing this interest should consider the reasonable expectations of the 
parties and the value of certainty in enforcement of contracts generally. See 
Restatement (Second) of Contracts 
§ 178(2).[18] On the other side of the scale is the 
extent to which the agreement frustrates important public policy.[19] Id. § 178 cmts. (b)–(d).
1. FREEDOM OF CONTRACT
            
We find applicable here our observations in Lawrence, in which 
this Court affirmed the enforceability of an agreement related to the Workers’ 
Compensation Act and considered public policies relevant at that time:
 
            
Undoubtedly, the issue we face raises critical and complex public policy 
issues. And the administration of the workers’ compensation system is heavily 
imbued with public policy concerns. At the same time, we have long recognized a 
strong public policy in favor of preserving the freedom of contract. Courts must 
exercise judicial restraint in deciding whether to hold arm’s-length contracts 
void on public policy grounds:
 
. . . .
 
            
Given the lack of any clear legislative intent to prohibit agreements 
like the ones before us, and absent any claim by the petitioners of fraud, 
duress, accident, mistake, or failure or inadequacy of consideration, we decline 
to declare them void on public policy grounds. We believe the 
factually-intensive, competing public policy concerns raised by the parties and 
by amici in these cases are not clearly resolved by the statute and are best 
resolved by the Legislature, not the judiciary.
 
 
Lawrence, 44 S.W.3d 
at 553. This Court has long recognized Texas’ strong public policy in favor of 
preserving the freedom of contract. Tex. 
Const. art. I, § 16 (“No bill of attainder, ex post facto law, 
retroactive law, or any law impairing the obligation of contracts, shall be 
made.”); see also Churchill Forge, Inc. v. Brown, 61 S.W.3d 368, 371 
(Tex. 2001); Lawrence, 44 S.W.3d at 553 (citations omitted); Wood 
Motor Co. v. Nebel, 238 S.W.2d 181, 185 (Tex. 1951).
 
[I]f there 
is one thing which more than another public policy requires it is that men of 
full age and competent understanding shall have the utmost liberty of 
contracting, and that their contracts when entered into freely and voluntarily 
shall be held sacred and shall be enforced by Courts of justice. Therefore, you 
have this paramount public policy to consider–that you are not lightly to 
interfere with this freedom of contract.
 
 
Nebel, 
238 S.W.2d at 185 (quoting Printing & Numerical Registering Co. v. 
Sampson, 19 L.R.Eq. 462, 465 (1875)). We also recognize the importance of 
the “indispensable partner” to the freedom of contract: contract enforcement. 
Chesapeake Operating, Inc. v. Nabors 
Drilling USA, Inc., 94 S.W.3d 163, 176 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (en banc). 
Importantly, freedom of contract is not unbounded. “As a rule, parties have the 
right to contract as they see fit as long as their agreement does not violate 
the law or public policy.” In re Prudential Ins. Co. of Am., 148 S.W.3d 
124, 129 & n.11 (Tex. 2004); see Sonny Arnold, Inc. 
v. Sentry Sav. Ass’n, 633 S.W.2d 811, 815 (Tex. 1982) (recognizing “the 
parties’ right to contract with regard to their property as they see fit, so 
long as the contract does not offend public policy and is not illegal”). Absent 
strong public policy reasons for holding otherwise, however, the preservation of 
contractual freedom and enforcement is no less applicable to the relationship 
between an insured and insurer. See Fortis Benefits v. Cantu, 234 S.W.3d 
642, 648, 649 (Tex. 2007). 
            
The Legislature determines public policy through the statutes it passes. 
Stafford Estates Ltd. P’ship, 135 S.W.3d at 628; Grizzle, 96 
S.W.3d at 250 (Texas’ public policy is reflected in its 
statutes); FM Props. Operating Co., 22 
S.W.3d at 873. The Legislature has passed many laws declaring certain agreements 
illegal and, therefore, against public policy. See, e.g., Tex. Bus. & Com. Code § 2.302 
(unconscionable contracts); Id. § 15.05 (contracts in restraint of 
trade or commerce); Tex. Fin. Code § 
302.001 (contracts for usurious interest); Tex. Civ. Prac. & Rem. Code §§ 
127.002–.003 (certain mineral agreements that provide for indemnification of a 
negligent indemnitee). 
            
In other cases, the Legislature has decided that public policy requires 
certain conditions be met before an agreement may be enforceable. See, 
e.g., Tex. Bus. & Com. Code § 
17.42 (A consumer’s waiver of DTPA remedies is against public policy 
unless specific requirements are met.); Tex. Gov’t Code § 2254.005 (Contracts 
for professional services not obtained in compliance with the Professional 
Services Procurement Act are void as against public policy.); Tex. Lab. Code § 406.035 (Except as 
provided by statute, an agreement waiving an employee’s right to workers’ 
compensation is void.). 
            
Also, this Court has held in a number of cases over the years that public 
policy clearly disfavors certain types of agreements.[20] In these circumstances, the Court has 
exercised its authority to determine and enforce public policy. 
2. PURPOSE OF EXEMPLARY DAMAGES
            
In situations where the Legislature has not spoken directly on whether 
public policy prohibits insurance coverage of exemplary damages for gross 
negligence, a court should consider the purpose of exemplary damages. The common 
law and legislative development of exemplary damages in Texas informs this 
analysis. 
            
For over 150 years, this Court has held that exemplary damage awards 
serve to punish the wrongdoer and set “a public example to prevent the 
repetition of the act.” Cole v. Tucker, 6 Tex. 266, 268 (1851); Graham v. Roder, 5 Tex. 141, 149 (1849); see also Cavnar v. Quality 
Control Parking, Inc., 696 S.W.2d 549, 555 (Tex. 1985). We confirmed that dual purpose in 
Transportation Insurance Co. v. Moriel, citing the Legislature’s 
definition of exemplary damages in force at the time of the opinion: “‘Exemplary 
damages’” means “any damages awarded as an example to others, as a penalty, or 
by way of punishment.” 879 S.W.2d 10, 16 (Tex. 1994). Although some pre-Moriel 
decisions recognized that exemplary damages “also exist to reimburse for losses 
too remote to be considered as elements of strict compensation” or to compensate 
a plaintiff for inconvenience and attorneys fees, these cases do not undermine 
the longstanding primary purpose of exemplary damages: to punish and 
deter. See Hofer v. Lavender, 679 S.W.3d 470, 474 (Tex. 1984) (citing Mayer v. Duke, 10 S.W. 565 
(1889)); Allison v. Simmons, 306 S.W.2d 206, 211 (Tex. Civ. App.—Waco 
1957, writ ref’d n.r.e.); Foster v. Bourgeois, 253 S.W. 880 (Tex. Civ. 
App.—Austin 1923), aff’d, 259 S.W. 917 (Tex. 1924).
            
Legislative enactments of the last decade clarify compensatory recovery 
is not a component of exemplary damages in Texas today, and the most recent enactments 
downplay the role of deterrence and focus squarely on the punitive aspect. Act 
of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109 
(deleting “as an example to others” from the definition and instead defining 
exemplary damages as “any damages awarded as a penalty or by way of 
punishment”), amended by Act of June 2, 2003, 78th Leg., ch. 204, § 
13.02, 2003 Tex. Gen. Laws 847, 887 (current version at Tex. Civ. Prac. & Rem. Code § 
41.001(5)) (“‘Exemplary damages’ means any damages awarded as a penalty or by 
way of punishment but not for compensatory purposes. Exemplary damages are 
neither economic nor noneconomic damages.”).[21]
            
Chapter 41 of the Texas Civil Practice and Remedies Code also makes clear 
that the punishment imposed through exemplary damages is to be directed at the 
wrongdoer. Section 41.006 provides that “[i]n any action in which there are two 
or more defendants, an award of exemplary damages must be specific as to a 
defendant, and each defendant is liable only for the amount of the award made 
against that defendant.” A defendant’s liability for exemplary damages based on 
the conduct of employees, agents, and associates is also limited. Section 41.005 
provides that “a court may not award exemplary damages against a defendant 
because of the criminal act of another” unless:
            
(1) the criminal act was committed by an employee of the 
defendant;
            
(2) the defendant is criminally responsible as a party to the criminal 
act under the provisions of Chapter 7, Penal Code;
            
(3) the criminal act occurred at a location where, at the time of the 
criminal act, the defendant was maintaining a common nuisance under the 
provisions of Chapter 125, Civil Practice and Remedies Code, and had not made 
reasonable attempts to abate the nuisance; or
            
(4) the criminal act resulted from the defendant’s intentional or knowing 
violation of a statutory duty under Subchapter D, Chapter 92, Property Code, and 
the criminal act occurred after the statutory deadline for compliance with that 
duty.
Tex. Civ. Prac. & Rem. Code § 
41.005(a)–(b). Even when the actor is the defendant’s employee, the defendant is 
not liable for exemplary damages unless:
            
(1) the principal authorized the doing and the manner of the 
act;
            
(2) the agent was unfit and the principal acted with malice in employing 
or retaining him;
            
(3) the agent was employed in a managerial capacity and was acting in the 
scope of employment; or
            
(4) the employer or a manager of the employer ratified or approved the 
act.
Id. § 
41.005(c). Chapter 41 provides that exemplary damages can be awarded for fraud, 
malice, gross negligence, or certain statutory violations. Id. § 41.003(a), 
(c). “Fraud” does not include constructive fraud. Id. § 41.001(6). 
“Malice” requires specific intent to cause substantial injury. Id. § 41.001(7). 
“Gross negligence “ is defined as:
an act or omission:
            
(A) which when viewed objectively from the standpoint of the actor at the 
time of its occurrence involves an extreme degree of risk, considering the 
probability and magnitude of the potential harm to others; and
            
(B) of which the actor has actual, subjective awareness of the risk 
involved, but nevertheless proceeds with conscious indifference to the rights, 
safety, or welfare of others.
Id. § 41.001(11). 
Other statutory actions may prescribe a different culpable mental state for 
exemplary damages. Id. § 41.003(c). With these basic 
standards in mind, Section 41.011(a) provides:
            
In determining the amount of exemplary damages, the trier of fact shall 
consider evidence, if any, relating to:
            
(1) the nature of the wrong;
            
(2) the character of the conduct involved;
            
(3) the degree of culpability of the wrongdoer;
            
(4) the situation and sensibilities of the parties concerned;
            
(5) the extent to which such conduct offends a public sense of justice 
and propriety; and
            
(6) the net worth of the defendant.
Id. § 
41.011(a).
            
The first, second, and fifth evidentiary factors raise concerns of an 
objective nature. How did the conduct of the defendant, viewed in the abstract, 
irrespective of the parties, depart from broad norms or expectations? It does 
not matter whether the defendant was a conglomerate or an individual; the nature 
of the conduct is what matters. On the other hand, the third, fourth, and sixth 
factors focus subjectively—because the issue is punishment—on the individual 
parties. What will it take to punish the defendant? 
            
There is some inherent tension between the policies recognized by freedom 
of contract and the policy behind awarding exemplary damages. Spreading the risk 
of, and obligation for, exemplary damages through insurance does not affect the 
objective factors. They may be evaluated without regard for individual 
personalities. The issue is this: What penalty should this conduct, in the 
abstract, bear? But the subjective factors are relevant to a determination of 
the amount of exemplary damages only if the defendant must pay it to the 
plaintiff. If exemplary damages are to be paid by insurance, it is less 
relevant to set the amount based on whether the plaintiff was trusting or the 
defendant calculating or wealthy. 
            
A few cases applying Texas law have considered whether insurance 
for exemplary damages is against public policy in light of the purpose behind 
exemplary damages. Their reasoning regarding the interplay of these competing 
policies is instructive.
            
Texas 
appellate courts have uniformly rejected as against public policy coverage under 
uninsured or underinsured motorist policies when the insured seeks to recover 
from his own insurer exemplary damages assessed against a third-party 
tortfeasor.[22] In that situation, the burden of the 
exemplary damages would fall entirely on the insurer and its policyholders, not 
on the tortfeasor, thereby entirely defeating the purpose of such damages. In 
one case, State Farm Mutual Automobile Insurance Co. v. Shaffer, Shaffer 
was injured in an automobile accident with Torres. 888 S.W.2d at 147. The court 
of appeals held that it was against public policy to require State Farm, 
Shaffer’s insurer, to pay exemplary damages assessed against Torres. Id. at 149. Citing 
Chapter 41 as establishing the basis and manner for assessing exemplary damages, 
the court explained that “neither deterrence of wrongful conduct nor punishment 
of Torres, the wrongdoer, is achieved by imposing exemplary damages upon 
Shaffer’s insurance carrier for Torres’ wrongful act.” Id. (citations 
omitted).
            
Other Texas courts of appeals have noted that the 
policy considerations regarding exemplary damages coverage depend on whether the 
basis for the damages is the conduct of the insured’s employees or agents. In 
American Home Assurance Co. v. Safway Steel Products Co., the insurers 
appealed a declaratory judgment in favor of the insureds for coverage of 
exemplary damages. 743 S.W.2d 693, 695–96 (Tex. App.—Austin 1987, writ denied). 
Exemplary damages of $750,000 and $1 million had been assessed against the 
insureds, respectively, in one case for gross negligence in failing to warn 
about the limitations of a football helmet the insured manufactured and in the 
other case for gross negligence in the design and marketing of a scaffold. 
Id.
            
The court of appeals observed that while allowing exemplary damages 
coverage shifts the burden of the punishment to “the innocent members of society 
who purchase insurance,” contrary to the purpose of such damages, disallowing 
coverage for a large corporation means that exemplary damages for the misconduct 
of perhaps one or only a few employees will “inevitably be passed on to the 
consumers of its products—who are also innocent,” also contrary to the damages’ 
purpose. Id. at 704. 
            
In DaimlerChrysler Insurance Co. v. Apple, an employee claimed 
that three of his employer’s managers had defamed him. No. 01-05-01115-CV, 2007 
WL 3105899, at *1–2 (Tex. App.—Houston [1st Dist.], Oct. 25, 2007, reh’g 
filed). The trial court confirmed in part the arbitration panel’s assessment of 
exemplary damages of $500,000 against the employer, $500,000 against its owner 
and CEO, and $50,000 each against the three managers, all of whom were 
determined to be vice-principals. Id. at *3 & n.4.[23] Following an appeal, the employer 
settled with the employee, but the employer’s insurer under both a CGL policy 
and an umbrella policy refused coverage of the exemplary damage awards, arguing 
in part that such coverage was against public policy. Id. at *3–4. The 
court of appeals disagreed but limited its holding to circumstances “where a 
corporation is held liable for conduct by vice-principals; the conduct was done 
without the participation or knowledge of the CEO, officers or shareholders of 
the corporation.” Id. at *18 (citations omitted). The 
court explained that under these circumstances “the agreement . . . serves the 
public good because [the employer], its CEO, its officers, and its shareholders 
did not commit the wrongful acts and should be allowed to have their insurance 
policy, for which they paid, indemnify them for the punitive damages.” 
Id. 
(citations omitted).[24] 
            
These courts of appeals cases highlight the general considerations that 
are important when determining whether the policy behind exemplary damages 
should limit parties’ ability to contract for coverage of those damages. In the 
uninsured and underinsured motorist context, it may be appropriate for 
policyholders to share in the burden of injuries caused by underinsured 
motorists, but not their punishment. In other words, the purpose of exemplary 
damages may not be achieved by penalizing those who obtain the insurance 
required by law for the wrongful acts of those who do not.
            
The considerations may weigh differently when the insured is a 
corporation or business that must pay exemplary damages for the conduct of one 
or more of its employees. Where other employees and management are not involved 
in or aware of an employee’s wrongful act, the purpose of exemplary damages may 
be achieved by permitting coverage so as not to penalize many for the wrongful 
act of one. When a party seeks damages in these circumstances, courts should 
consider valid arguments that businesses be permitted to insure against 
them.
            
Extreme circumstances may prompt a different analysis. The touchstone is 
freedom of contract, but strong public policies may compel a serious analysis 
into whether a court may legitimately bar contracts of insurance for extreme and 
avoidable conduct that causes injury. For example, liability policies themselves 
normally bar insurance for damages caused by intentional conduct, as did the 
liability policy in this case. The fact that insurance coverage for exemplary 
damages may encourage reckless conduct likewise gives us pause. Were the 
existence of insurance coverage to completely eviscerate the punitive purpose 
behind awarding exemplary damages, it could defeat not only an explicit 
legislative policy but also the court’s traditional role in deterring conscious 
indifference. See Restatement 
(Second) of Contracts § 178(3). However, Justice Hecht’s concurrence would go 
further and more fully address these circumstances.
IV. CONCLUSION
            
The Legislature authorized the Texas Department of Insurance to create a 
policy that provides insurance coverage for exemplary damages in workers’ 
compensation cases. Thus, we decline to invalidate the parties’ workers’ 
compensation contract to enforce a public policy urged by Fairfield but not adopted 
by the Legislature. In response to the certified question, we answer that the 
public policy of Texas does not prohibit insurance coverage of 
exemplary damages for gross negligence in the workers’ compensation context. 
However, without clear legislative intent to generally prohibit or allow the 
insurance of exemplary damages arising from gross negligence, we decline to make 
a broad proclamation of public policy here but instead offer some considerations 
applicable to the analysis in other cases. Of course, how our answer is applied 
in the case before the Fifth Circuit is solely the province of that certifying 
court. Amberboy v. Societe de Banque Privee, 831 S.W.2d 793, 798 
(Tex. 
1992).
 
 
            
________________________________________
            
J. Dale Wainwright
            
            
            
            
            
            
            
Justice
 
OPINION 
DELIVERED: February 15, 2008






[1] 
Generally, an employer who purchases workers’ compensation insurance is 
protected from an employee’s common law claims for injuries occurring during the 
course and scope of the employee’s work responsibilities. Tex. Lab. Code § 408.001. However, this 
exclusive remedy doctrine does not prohibit recovery of exemplary damages if the 
employee’s death is caused by the employer’s gross negligence. Id. § 
408.001(b)–(c). 

[2] 
As part of the Medical Liability Insurance Improvement Act of Texas, passed in 
1977, the Legislature prohibited “health care providers” from obtaining 
insurance coverage of exemplary damages in Texas. Act of May 30, 1977, 65th Leg., R.S., 
ch. 817, Part 3, § 8, 1977 Tex. Gen. Laws 2039, 2055–56. “Health care 
provider” was defined as: 
 
any person, partnership, professional association, 
corporation, facility, or institution licensed or chartered by the State of 
Texas to provide health care as a registered nurse, hospital, dentist, 
podiatrist, chiropractor, optometrist, blood bank that is a nonprofit 
corporation chartered to operate a blood bank and which is accredited by the 
American Association of Blood Banks, or not-for-profit nursing home, or an 
officer, employee, or agent of any of them acting in the course and scope of his 
employment.
 
Act of May 30, 1977, 65th Leg., R.S., ch. 817, Part 3, § 
2(2), 1977 Tex. Gen. Laws 2039, 2055. Later amendments 
redefined health care providers and expressly allowed providers to obtain 
insurance coverage of exemplary damages through an approved policy endorsement. 
Act of June 3, 1987, 70th Leg., 1st C.S., ch. 1, § 7.01, 1987 Tex. Gen. Laws 1, 
35–36 (allowing an endorsement for hospitals); Act of May 21, 1997, 75th Leg., 
R.S., ch. 746, § 1, 1997 Tex. Gen. Laws 2451, 2451 (allowing an endorsement for 
not-for-profit nursing homes); Act of May 27, 2001, 77th Leg., R.S., ch. 1284, § 
5.02, 2001 Tex. Gen. Laws 3083, 3085 (requiring an endorsement for for-profit 
nursing homes); Act of May 14, 2003, 78th Leg., R.S., ch. 141, § 2, 2003 Tex. 
Gen. Laws 195, 195 (allowing an endorsement for assisted living 
facilities).

[3] 
Act of June 3, 1987, 70th Leg., 1st C.S., ch. 1, § 5.08, 1987 Tex. Gen. Laws 1, 
26 (current version at Tex. Ins. 
Code §§ 2207.001–.409) (Excess Liability Pool for Counties and Certain 
Educational Entities); Act of June 3, 1987, 70th Leg., 1st C.S., ch. 1, § 5.09, 
1987 Tex. Gen. Laws 1, 31 (current version at Tex. Ins. Code §§ 2208.001–.309) 
(Texas Public 
Entity Excess Insurance Pool).

[4] 
Tex. Ins. Code § 2207.353(c) 
(“Money in the [Excess Liability Fund for Counties and Certain Educational 
Entities] may not be used to pay: (1)punitive damages . . . .”); id. § 
2208.252(b) (“Money in the [Texas Public Entity Excess Insurance Fund] may not 
be used to pay: (1) punitive damages . . . .”); id. § 2208.303 (“Excess 
insurance coverage provided by the [Texas Public Entity Excess Insurance Pool] 
may not include coverage for punitive damages.”).

[5] 
Act of May 29, 1989, 71st Leg., R.S., ch. 1082, § 6.13, 1989 Tex. Gen. Laws 
4370, 4395–96 (current version at Tex. 
Ins. Code § 462.210). See also Act of May 30, 2003, 78th Leg., 
R.S., ch. 1218, § 2, 2003 Tex. Gen. Laws 3458, 3459 (current version at Tex. Ins. Code § 462.302(c)(2)) (“The 
[Texas Property and Casualty Insurance Guaranty Association] has no liability 
for . . . claims for . . . exemplary damages . . . .”). That Act was first 
passed in 1971 to protect insolvent property and casualty insurers’ 
policyholders and third-party claimants by authorizing assessments against other 
Texas insurers 
to pay “covered claims” against insurers that had become insolvent. Act of May 
12, 1971, 62d Leg., R.S., ch. 360, § 1, 1971 Tex. Gen. Laws 1362 (current 
version at Tex. Ins. Code §§ 
462.001–.351).

[6] 
Tex. Ins. Code § 463.204 (9) 
(stating that the Life, Accident, Health, and Hospital Service Insurance 
Guaranty Association cannot pay punitive or exemplary damages); id. § 
2203.154 (“The [Medical Liability Insurance Joint Underwriting Association] may 
not issue or renew a medical liability insurance policy for a physician or 
health care provider under this chapter that includes coverage for punitive 
damages assessed against the physician or health care provider.”); id. § 
2205.253(b) (Money in the [Texas Child-Care Facility Liability Fund] may not be 
used to pay: (1) punitive damages . . . .”); id. § 2209.253(b) (“Money in 
the [Texas Nonprofit Organizations Liability Fund] may not be used to pay: (1) 
punitive damages . . . .”); id. § 2209.303 (“Liability insurance coverage 
provided by the [Texas Nonprofit Organizations Liability Pool] may not include 
coverage for punitive damages.”); id. § 2602.255(4) (excluding 
“exemplary, extracontractual, or bad faith damages awarded against an insured or 
title insurance company by a court judgment” from “covered claims” against the 
Texas Title Insurance Guaranty Association).

[7] 
The Legislature also requires commercial liability insurers to file closed claim 
reports including, among much other information, “amounts paid for punitive 
damages.” Tex. Ins. Code § 
38.154(a)(3)(C)(x). At a minimum, this suggests that the Legislature is aware 
that insurers are making some payments for punitive damages and has not broadly 
prohibited those payments.

[8] 
Before 1991, the Texas Department of Insurance (TDI) was known as the State 
Board of Insurance. Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 1.01, 1991 
Tex. Gen. Laws 939, 939; see also Act of May 30, 1993, 73rd Leg., R.S., 
ch. 685, § 1.01, 1993 Tex. Gen. Laws 2559, 2559 (specifying that “a reference in 
[all statutes involving insurance] to the State Board of Insurance means 
[TDI]”).

[9] 
In 2005, the Legislature renumbered and codified Article 5.56 and other articles 
into sections of the Texas Insurance Code. Act of May 24, 2005, 79th Leg. R.S., 
ch. 727, §§ 2, 18(a)(4). We cite to the version applicable to the underlying 
suit in this case. Tex. Ins. Code 
art. 5.56 (added by Act of June 7, 1951, 52d Leg., R.S., ch. 491, 
1951 Tex. Gen. 
Laws 868, 945).

[10] Organizations may “use any form of 
endorsement appropriate to its plan of operation, if such endorsement [is] first 
submitted to and approved by the Board.” Tex. Ins. Code art. 5.57.

[11] The TDI policy does not provide coverage of 
“punitive or exemplary damages because of bodily injury to an employee employed 
in violation of law,” nor does it cover these damages arising from injuries 
caused by intentional acts. An endorsement to the policy adds that “[t]his 
exclusion does not apply unless the violation of law caused or contributed to 
the bodily injury.” We note that Bennett’s petition alleges that Stephens Martin 
Paving failed to follow and enforce safety rules and regulations and OSHA rules 
and regulations. Because we do not have a complete record and we limit our 
discussion to the Fifth Circuit’s certified question, we do not address whether 
these allegations trigger the exclusion. 

[12] Haw. Rev. Stat. § 431:10-240 (2007) 
(“Coverage under any policy of insurance issued in this State shall not be 
construed to provide coverage for punitive or exemplary damages unless 
specifically included.”); Mont. Code 
Ann. § 33-15-317 (2007) (“Insurance coverage does not extend to punitive 
or exemplary damages unless expressly included by the contract of insurance.”); 
Nev. Rev. Stat. § 681A.095 (2007) 
(“An insurer may insure against legal liability for exemplary damages or 
punitive damages that do not arise from a wrongful act of the insured committed 
with the intent to cause injury to another.”); Va. Code Ann. § 38.2-227 (2007) (“It is 
not against the public policy of the Commonwealth for any person to purchase 
insurance providing coverage for punitive damages arising out of the death or 
injury of any person as the result of negligence, including willful and wanton 
negligence, but excluding intentional acts.”); Montgomery Health Care Facility, Inc. v. 
Ballard, 565 So.2d 221, 226 (Ala. 
1990) (wrongful death case); State Farm Mut. Auto. Ins. Co. v. Lawrence, 
26 P.3d 1074, 1080 (Alaska 2001); State Farm Mut. Auto. Ins. Co. v. 
Wilson, 782 P.2d 727, 729–36 (Ariz. 1989); Cal. Union Ins. Co. v. 
Ark. La. Gas Co., 572 S.W.2d 393, 453 (Ark. 1978) (citing So. Farm Bureau 
Cas. Ins. Co. v. Daniel, 440 S.W.2d 582 (Ark. 1969)); Jones v. State Farm Mut. Auto. Ins. 
Co., 610 A.2d 1352, 1354 (Del. 
1992); Roman v. 
Terrell, 393 S.E.2d 83, 86 (Ga. Ct. 
App. 1990), aff’d by, State Farm Mut. Auto Ins. Co. v. 
Weathers, 392 S.E.2d 1 (Ga. 1990); Abbie Uriguen Oldsmobile Buick, Inc. 
v. U.S. Fire Ins. Co., 511 P.2d 783, 789–91 (Idaho 1973); 
Grinnell, 654 N.W.2d at 540–41 (citing Skyline Harvestore Sys., Inc. 
v. Centennial Ins. Co., 331 N.W.2d 106, 109 (Iowa 1983)); Ky. Cent. Ins. Co. v. Schneider, 15 S.W.3d 373, 376 (Ky. 2000) (citing Cont’l Ins. 
Cos. v. Hancock, 507 S.W.2d 146 (Ky. 1973)); First Nat’l Bank of St. 
Mary’s v. Fid. & Deposit Co., 389 A.2d 359, 364–67 (Md. 1978); 
Shelter Mut. Ins. Co. v. Dale, 914 So. 2d 698, 703 (Miss. 
2005); Mazza v. Med. Mut. Ins. Co. of N.C., 319 S.E.2d 217, 220–22 (N.C. 
1984) (negligent medical malpractice); 
MacKinnon v. Hanover Ins. Co., 471 A.2d 1166, 1168 (N.H. 1984) (holding 
that public policy does not prohibit homeowner’s insurance policy from covering 
liability arising from intentional tort of battery and negligent infliction of 
emotional distress); Cont’l Cas. Co. v. Kinsey, 499 N.W.2d 574, 581 (N.D. 
1993) (requiring insurer to indemnify insured for punitive damages award 
according to insurance policy, but allowing insurer to seek reimbursement from 
insured because contracting away responsibility for “willful fraud and deceit” 
violated state statute); Harrell v. Travelers Indem. Co., 567 P.2d 
1013, 1021 (Or. 1977); S.C. State 
Budget & Control Bd. v. Prince, 
403 S.E.2d 643, 648 (S.C. 1991) (holding insurer could not deny coverage for 
punitive damages “in the name of the public policy when the language of its own 
policy specifically provides such coverage,” but failing to explain why); 
State v. Glens Falls Ins. Co., 404 A.2d 101, 105 (Vt. 1979); 
Fluke, 34 P.3d at 815; Loveridge v. Chartier, 468 N.W.2d 146, 159 
(Wis. 1991); State ex rel. State Auto Ins. Co. v. Risovich, 511 S.E.2d 
498, 505 (W. Va. 1998); Sinclair Oil 
Corp. v. Columbia Cas. Co., 682 P.2d 975, 981 (Wyo. 1984). 

[13] Ohio Rev. Code Ann. § 3937.182(B) 
(2008) (prohibiting coverage for punitive and exemplary damages in automobile 
policies and certain types of casualty and liability policies); Utah Code Ann. § 31A-20-101(4) (2007) 
(“No insurer may insure or attempt to insure against . . . punitive damages.”); 
PPG Indus. v. Transamerica Ins. 
Co., 975 P.2d 652, 657 (Cal. 
1999); Lira v. Shelter Ins. Co., 913 P.2d 514, 517 (Colo. 1996); 
Bernier v. Burris, 497 N.E.2d 763, 776 (Ill. 1986) (citing Beaver v. 
Country Mut. Ins. Co., 420 N.E.2d 1058, 1060–61 (Ill. App. Ct. 1981)) (in 
dicta); Biondi v. Beekman Hill House Apartment Corp., 731 N.E.2d 577, 579 
(N.Y. 2000); Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, 
Inc., 860 A.2d 1210, 1219 n.14 (R.I. 2004); City of Fort Pierre v. 
United Fire & Cas. Co., 463 N.W.2d 845, 848 (S.D. 1990). 

[14] Kan. Stat. Ann. § 40-2,115(a) (2006) 
(“It is not against the public policy of this state for a person or entity to 
obtain insurance covering liability for punitive or exemplary damages assessed 
against such insured as the result of acts or omissions, intentional or 
otherwise, of such insured’s employees, agents or servants, or of any other 
person or entity for whose acts such insured shall be vicariously liable, 
without the actual prior knowledge of such insured.”); Bodner v. United Servs. Auto. Ass’n, 610 A.2d 1212, 1221–22 (Conn. 1992); U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061, 1064 (Fla. 1983); Perl v. St. 
Paul Fire & Marine Ins. Co., 345 N.W.2d 209, 216 (Minn. 1984); ; 
Malanga v. Mfgs. Cas. Ins. Co., 146 A.2d 105, 108–10 (N.J. 1958); Aetna 
Cas. & Sur. Co. v. Craig, 771 P.2d 212, 215–16 (Okla. 1989); 
Esmond v. Liscio, 224 A.2d 793, 800 (Pa. 1966). 

[15] Sharp v. Daigre, 555 So. 2d 1361, 
1364 (La. 1990) (mentioning but not applying broad rule to general liability 
insurance); Jaramillo v. Providence Wash. 
Ins. Co., 871 P.2d 1343, 1351–52 
(N.M. 1994); Carr v. Ford, 833 S.W.2d 68, 71 (Tenn. 1992) (holding 
uninsured motorist statute permits but does not require coverage for punitive 
damages); Lazenby v. Universal Underwriters Ins. Co., 383 S.W.2d 1 (Tenn. 
1964). But see West v. Pratt, 871 S.W.2d 477, 479 (Tenn. 1994) 
(stating in dicta that a “clear public policy exists in Tennessee that strongly 
disfavors the payment of punitive damages by uninsured motorist carriers to 
their insureds”).

[16] Tuttle v. Raymond, 494 A.2d 1353, 
1360 n.20, 1362 & n.25 (Me. 1985) (citing Braley v. Berkshire Mut. Ins. 
Co., 440 A.2d 359, 361–62 (Me. 1982)); Santos v. Lumbermens Mut. Cas. 
Co., 556 N.E.2d 983, 990, 991 n.17 (Mass. 1990). 

[17] Nebraska does not allow recovery of 
exemplary damages. Distinctive Printing & 
Packaging Co. v. Cox, 232 Neb. 846, 
857 (Neb. 1989) (citing Neb. 
Const. art. VII, § 5; Miller v. Kingsley, 230 N.W.2d 472, 
474 (Neb. 1975) (“It is a fundamental rule of law in this state that punitive, 
vindictive, or exemplary damages are not allowed.”)). 

[18] “In weighing the interest in the 
enforcement of a term, account is taken of (a) the parties’ justified 
expectations, (b) any forfeiture that would result if enforcement were denied, 
and (c) any special public interest in the enforcement of the particular term.” 
Restatement (Second) of Contracts 
§ 178(2).

[19] “In weighing a public policy against 
enforcement of a term, account is taken of (a) the strength of that policy as 
manifested by legislation or judicial decisions, (b) the likelihood that a 
refusal to enforce the term will further that policy, (c) the seriousness of any 
misconduct involved and the extent to which it was deliberate, and (d) the 
directness of the connection between that misconduct and the term.” Restatement (Second) of Contracts § 
178(3).

[20] See, e.g., Hoover Slovacek LLP v. 
Walton, 206 S.W.3d 557, 559 (Tex. 2006) (holding that agreement between 
lawyer and client providing for termination fee was against public policy); 
PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 146 S.W.3d 
79, 82, 87 (Tex. 2004) (holding that assignment of claims for violations of the 
Texas Deceptive Trade Practices–Consumer Protection Act was against public 
policy); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 205 
(Tex. 2002) (holding that lawyer fee-sharing agreement was against public 
policy); State Farm Fire and Cas. Co. v. Gandy, 925 S.W.2d 696, 698, 705 
(Tex. 1996) (holding that insured’s prejudgment assignment of claims against 
liability insurer was against public policy); Zuniga v. Groce, Locke & 
Hebdon, 878 S.W.2d 313, 316 (Tex. App.—San Antonio 1994, writ ref’d) 
(holding that assignment of legal malpractice claims was against public policy); 
Elbaor v. Smith, 845 S.W.2d 240, 241 (Tex. 1992) (holding that Mary 
Carter agreements, in which the defendant receives assignment of part of 
plaintiff’s claim and both remain parties at trial were against public policy); 
Desantis v. Wackenhut Corp., 793 S.W.2d 670, 681 (Tex. 1990) (holding 
that unreasonable non-competition agreement was against public policy); 
Juliette Fowler Homes, Inc. v. Welch Assocs., 793 S.W.2d 660, 663 (Tex. 
1990) (same); Int’l Proteins Corp. v. Ralston-Purina Co., 744 S.W.2d 932, 
934 (Tex. 1988) (holding that assignment of plaintiff’s claims against one 
tortfeasor to another tortfeasor was against public policy); Ethyl Corp. v. 
Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex. 1987) (holding that indemnity 
against one’s own negligence was against public policy without express 
language); Trevino v. Turcotte, 564 S.W.2d 682, 690 (Tex. 1978) (holding 
that assignment of right to challenge will to one who had taken under will was 
against public policy); Crowell v. Housing Auth. of Dallas, 495 S.W.2d 
887, 889 (Tex. 1973) (holding that lease provision exempting landlord from tort 
liability to tenants was against public policy); Hooks v. Bridgewater, 
229 S.W. 1114, 1118 (Tex. 1921) (holding that contract transferring custody of a 
child in exchange for permitting the child to inherit from the transferee was 
against public policy).

[21] Many of the other “remote” categories of 
damages reflected in previous exemplary damage awards are now available, or 
explicitly unavailable, by Legislative enactment rather than as a component of 
exemplary damages. See, e.g., Tex. Bus. & Com. Code § 17.50(d) 
(prevailing consumers “shall” recover attorney’s fees under the Texas Deceptive 
Trade Practices Act); Tex. Civ. Prac. 
& Rem. Code § 41.001(4) (“‘Economic damages’ means compensatory 
damages intended to compensate a claimant for actual economic or pecuniary loss; 
the term does not include exemplary damages or noneconomic damages.”) 
(emphasis added); id. § 41.001(12) (“‘Noneconomic damages’ means damages 
awarded for the purpose of compensating a claimant for physical pain and 
suffering, mental or emotional pain or anguish, loss of consortium, 
disfigurement, physical impairment, loss of companionship and society, 
inconvenience, loss of enjoyment of life, injury to reputation, and all other 
nonpecuniary losses of any kind other than exemplary damages.”) (emphasis 
added); see also New Amsterdam Cas. Co. v. Tex. Indus. Inc., 414 S.W.2d 
914, 915 (Tex. 1967) (restating “the rule that statutory provisions for the 
recovery of attorney’s fees are in derogation of the common law”). These 
Legislative enactments demonstrate the punitive nature of exemplary 
damages.

[22] Milligan v. State Farm Mut. Auto. Ins. 
Co., 940 S.W.2d 228, 232 (Tex. App.—Houston [14th Dist.] 1997, writ denied), 
overruling Home Indemnity Co. v. Tyler, 522 S.W.2d 594 (Tex. Civ. 
App.—Houston [14th Dist.] 1975, writ ref’d n.r.e.); State Farm Mut. Auto. 
Ins. Co. v. Shaffer, 888 S.W.2d 146, 149 (Tex. App.—Houston [1st Dist.] 
1994, writ denied); Vanderlinden v. USAA Prop. & Cas. Ins. Co., 885 
S.W.2d 239, 242 (Tex. App.—Texarkana 1994, writ denied); Gov’t Employees Ins. 
Co. v. Lichte, 792 S.W.2d 546, 549 (Tex. App.—El Paso 1990), writ 
denied, 825 S.W.2d 431 (Tex. 1991) (per curiam).

[23] See also Hammerly Oaks, Inc. v. 
Edwards, 958 S.W.2d 387, 391 (Tex. 1997) (stating that “the general rule in 
Texas” is set out in Restatement of 
Torts § 909 (1939): “Punitive damages can properly be awarded against a 
master or other principal because of an act by an agent if, but only if, (a) the 
principal authorized the doing and the manner of the act, or (b) the agent was 
unfit and the principal was reckless in employing him, or (c) the agent was 
employed in a managerial capacity and was acting in the scope of employment, or 
(d) the employer or a manager of the employer ratified or approved the 
act.”).

[24] Similarly, the court of appeals in 
Westchester Fire Insurance Co. v. Admiral Insurance Co., made a limited 
holding that exemplary damages in a case involving grossly negligent treatment 
of a nursing home resident were, under the applicable statute in effect when the 
underlying suit against the insured was settled, insurable. 152 S.W.3d 172, 176 
(Tex. App.—Fort Worth 2004, pet. filed). The primary carrier filed a motion for 
partial summary judgment, arguing that Texas public policy prohibits insurance 
coverage of exemplary damages. The trial court concluded that any coverage for 
exemplary damages under the policy was void. The court of appeals reversed, 
deciding that Texas public policy at the times relevant to the underlying 
case did not preclude coverage for exemplary damages under the primary carrier’s 
policy. Id. at 189–90.